**FILED**
**07-29-2024**
**CIRCUIT COURT**
**DANE COUNTY, WI**
**2023CV002875**

**BY THE COURT:**

**DATE SIGNED: July 29, 2024**

<u>Electronically signed by Honorable Nia Trammell</u>
Circuit Court Judge

| | | |
|---|---|---|
| STATE OF WISCONSIN | CIRCUIT COURT<br>BRANCH 6 | DANE COUNTY |

---

JANE DOE,

      Plaintiff,

      v.

                                     Case No. 23-CV-2875

JAY C. LICK, D.O., KATHERINE M.
GAST, M.D., And THE INJURED PATIENTS AND
FAMILIES COMPENSATION FUND,

      Defendants.

---

## DECISION AND ORDER ON MOTION TO PROCEED USING A PSEUDONYM

---

Plaintiff Jane Doe ("Plaintiff") has sued the Defendants, Dr. Jay Lick ("Dr. Lick") and

Dr. Katherine Gast ("Dr. Gast"), alleging that the treatment she received was medically

negligent. She complains that these doctors failed to obtain proper informed consent before

performing procedures on her in violation of § 448.30, Stat. The Plaintiff moved to proceed

anonymously as "Jane Doe" in these proceedings and also seeks a protective order. This

Decision and Order addresses her request to move pseudonymously. Her motion for a protective

order will be addressed by a separate order.

**EXHIBIT**

**A**

## BACKGROUND

Plaintiff Jane Doe is a 24 year old resident of Illinois. (Dkt. 72 at 2.) At 17, she began exploring whether she was transgender, and believed she may be experiencing gender dysphoria. *Id*. at 4. After some initial care out of state on this health matter in 2018, Plaintiff was prescribed testosterone. She then came under the care of Dr. Jay Lick at University of Wisconsin Hospital in Madison, Wisconsin in March 2019. *Id*. At that time, she 19 years old and presented as transgender. *Id*. at 5. After consulting with Dr. Lick, the Plaintiff opted to proceed with a hysterectomy. *Id*. On February 4, 2021, the Plaintiff consulted with Dr. Katherine Gast, a plastic surgeon, to inquire about removing her breasts via a double mastectomy. *Id*. at 14. Dr. Gast removed both of the Plaintiff's breasts and performed a nipple reduction on August 31, 2021. *Id*. Plaintiff complained of issues with the resulting scar, which Dr. Gast revised in a subsequent procedure April 15, 2022. *Id*. By November 2022, Plaintiff came to realize that neither the testosterone nor surgeries had alleviated her mental distress like she thought they would. *Id*. at 22. She stopped taking testosterone and decided she no longer wished to present as a transgender person. *Id*.

Plaintiff alleges she has suffered permanent physical injuries as a result of the surgeries performed by Dr. Lick and Dr. Gast, which she claims caused her severe mental distress, including suicidal ideation. *Id*. at 24. She sued each doctor for medical negligence and failure to obtain informed consent per § 448.30. *Id*. at 25. She wishes to pursue her claims anonymously, using the moniker "Jane Doe".

**LEGAL STANDARD**

"The ordinary rule in Wisconsin and everywhere is that those availing themselves of the legal system should do so openly." *Doe v. Madison Metro. Sch. Dist.*, 2022 WI 65, ¶12, 403 Wis.2d 369, 976 N.W.2d 584 (2022). The Wisconsin Supreme Court has noted that while our laws make exceptions to "protect certain vulnerable legal participants, such as children and crime victims," it is generally the case that "the business of courts is public business, and as such is presumed to remain open and available to the public." *Id.* Nevertheless, in *State ex rel. Bilder v. Township of Delavan*, the court provided three circumstances for which the presumption of open and public court proceedings may be overcome. *State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 553, 334 N.W.2d 252 (1983). There, the court noted that (1) documents may be closed to the public when a statute requires or authorizes as much; (2) if disclosure would infringe on a constitutional right; and (3) "when the administration of justice requires it," the court may exercise inherent powers under the constitution "to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings." *Id*. at 554-556.

Although *Bilder's* focus was in the context of confidentiality of public records, it has been recognized that the court's power "to preserve and protect the exercise of its judicial function of presiding over the conduct of judicial proceedings" extends beyond public records requests. *Id.* at 556. The authority is inclusive of the powers "necessary for the courts to function as courts." *Doe*, 2022 WI 65, ¶16, 403 Wis.2d 369, 976 N.W.2d 584 (citing *State v. Schwind*, 2019 WI 48, ¶12, 386 Wis. 2d 526, 926 N.W.2d 742). Thus, the "inherent authority of courts would … also reach other interests implicated by the openness of judicial proceedings, including the potential for threats and harassment alleged in this case." *Id.* "These interests go to the core of the judiciary's duty to preside over and conduct judicial proceedings...." Ultimately, it is left

to the sound discretion of the Court whether information may remain confidential in a case. *Id.* at ¶¶23-24.

## ANALYSIS

The Plaintiff wishes to use a pseudonym in place of her real name for all public filings. (Dkt. 57, at p. 6). She argues that "[t]he public has an overriding interest in protecting Doe's privacy and reputation to ensure that Doe is protected from inevitable harassment, violence, discrimination, retaliation, and media attention for bringing exceptionally personal claims of medical malpractice related to her 'gender-affirming care.'" *Id.* at 5-6. She notes that issues related to "transgender rights and gender-affirming care has become a sharply polarizing issue that incites harassment from all sides." *Id.* at 7. Citing *Doe v. Madison Metro. Sch. Dist.*, the Plaintiff maintains that an even more compelling basis exists for allowing her to proceed anonymously –she highlights that her case involves "gender affirming" healthcare and the standard of care attendant to that, which she believes could "incite even greater backlash on a national scale." *Id.* In support of her request, Plaintiff provides the example of detransitioned litigants bringing medical malpractice suits across the country being subjected to "hate mail, death threats, 'doxxing', intimidation, and other harassingly negative emotional reactions from the public across the United States." *Id.*

Moreover, the Plaintiff urges the Court to consider the sensitive nature of the case at hand, which would require careful scrutiny of her medical records relative to the gender affirming care received, which has potential to expose traumatic incidents from her childhood. (Dkt. 57, at p. 8). Plaintiff argues that "the public has a compelling interest in protecting [Plaintiff], a victim of medical malpractice, from such egregious and damaging conduct, such as the harassment and intimidation other detransitioners have faced." *Id.*

As articulated, the Court may protect information in court proceedings where "the administration of justice requires" or when an "overriding public interest" in protecting the information outweighs the presumption of public access. With the latter basis, Wisconsin law requires consideration of the public's interest in protecting a party's identity, not the plaintiff's private interest, when weighing the facts. *Doe v. Madison Metro. Sch. Dist.*, 2021 WI App 60, ¶23, 399 Wis.2d 102, 963 N.W.2d 823 (Ct. App. 2021)(citing *Krier v. EOG Env't, Inc.*, 2005 WI App 256, ¶23, 288 Wis. 2d 623, 707 N.W.2d 915 (strong presumption favoring access "may be overcome only by a showing of an overriding public interest in closure."); *Linzmeyer v. Forcey*, 2002 WI 84, ¶31, 254 Wis. 2d 306, 646 N.W.2d 811 ("public interest in protecting the reputation and privacy of citizens ... is not equivalent to an individual's personal interest.").

The State Defendant's argue that in seeking to seal her name, the only public interest that the Plaintiff identifies is the need to protect her own privacy and reputation. (Dkt. 77, at p. 4). This Court disagrees. There are greater public interests at issue here than just any humiliation or reputational harm that the Plaintiff may experience from bringing her claims. As identified by the Plaintiff, this matter involves the provisioning of gender affirming care to a young adult and the standard of care that applies. Both parties acknowledge the public interest in the factual underpinnings of the case, as cases such as this are shaping across the nation and will ultimately provide guidance, as well as serve to engage public discourse on what should be the wisdom of the courts. Plaintiff documented the enmity that exists for detransitioners, and cites instances where they been subjected to threats and potential harm, as well as harassment for bringing voice to their experiences through medical malpractice claims. Additionally, the Plaintiff demonstrates that her case involves highly sensitive medical records, some of which may dredge up issues related to past traumatic events in her childhood.

In the words of the Plaintiff, this case has the potential to become a case that "morphs into an ideological battlefield," for which the Court must be concerned with focusing on the actual legal matters at issue. (Dkt. 81, at p. 11). It should not be lost in the arguments that the issues to be decided on the merits in this case have less to do with the Plaintiffs identity, but more to do with the alleged actions of the doctors, who are public, government actors, and whether the care they met the standard of care for services provided. It's the facts that people are interested in. There is a lessened public interest in knowing the Plaintiff's name. As Plaintiff notes, the facts of this case will still be public facing and public access to the facts would not be hindered absent further protective orders. *Id.*, at p. 10. But, revealing the Plaintiff's identity to the public poses real risks of threats, intimidation, doxxing, harassment and exposing matters related to past childhood trauma. The public's interest in maintaining the Plaintiff's anonymity is simple. Should the Court not preserve her anonymity, there would be a chilling effect for future litigants desiring to bring claims such as the case at bar. They would be deterred for fear of facing any virulent backlash that may result from bringing a like suit, and they may feel apprehension about having their childhood trauma related to sexual abuse spotlighted for the world's fodder and consumption. The Court concludes that there is an overriding public interest in protecting the Plaintiff's identity which outweighs the presumption of public access. Furthermore, the Court agrees that Plaintiff is a susceptible and vulnerable litigant, such that the administration of justice compels this Court to permit her to proceed anonymously.

The Defendants raise concerns that allowing the Plaintiff to proceed with a pseudonym will cause them prejudice. The court agrees with Plaintiff that this is tempered by the fact that the Defendants already know her identity. The task ahead is to fashion any further protective

orders that are consistent with an order that allows Plaintiff to proceed anonymously, and which balances the needs for the Defendants to fairly defend the action.

## ORDER

For the reasons stated, Plaintiff's Motion to Proceed Using a Pseudonym is GRANTED.

IT IS HEREBY ORDERED that all Parties must replace and refer to Plaintiff as "Jane Doe" pseudonym for all documents, filings, pleadings, or other public facing documents. Defendants shall also refrain from otherwise identifying Plaintiff publicly.

IT IS SO ORDERED.