**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Jane Doe, | Court File No: |
| Plaintiff, | Case Type: Civil Medical Malpractice/Other |
| v. | Judge: |
| United States, | |
| Defendant. | |

## COMPLAINT

Plaintiff Jane Doe, as and for her Complaint against Defendant the United States of America alleges as follows:

### INTRODUCTION

1. Jane Doe ("Doe") is a woman who has suffered with her identity from an early age due to and following a series of traumatizing events within her childhood home, including being sexually abused. She has been diagnosed with numerous mental health conditions including post-traumatic stress disorder, anxiety, and depression.

2. In the height of this vulnerability, Doe sought initial gender-affirming care from Howard Brown Health, a federally qualified heath center.

3. Howard Brown Health initiated hormone therapy for Doe at her very first appointment even though she did not have and had never had a gender dysphoria diagnosis.

4. In order to prescribe testosterone for Doe's hormone therapy, a Howard Brown Health practitioner falsely diagnosed her with an endocrine disorder.

1

**EXHIBIT**

**B**

5. Howard Brown Health also recommended and cleared Doe for permanent, life-altering surgery when she was only nineteen years old and had known complex health and social histories including childhood sexual abuse, post-traumatic stress disorder, anxiety, and depression.

6. These actions led Doe down an irreversible path, left her barren and breastless, and forced her to live the remainder of her life in a sterile physical state all on the advice of the medical professionals that she trusted.

## PARTIES

6. Plaintiff Jane Doe is an adult resident of Illinois.

7. Defendant, The United States of America, is implicated under 42 U.S.C. § 233(g) as Howard Brown Health is a federally qualified health center whose physicians or other licensed or certified health care practitioners are deemed to be employees of the Public Health Service.

## <u>JURISDICTION</u>

8. This Court has jurisdiction over Doe's Federal Torts Claim Act claim under 28 U.S. Code § 1346.

9. Under 42 U.S.C.§ 233(g), a qualifying entity (a public or non-profit private entity receiving federal funds), and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner, shall be deemed to be an employee of the Public Health Service.

10. The remedy against the United States for such entity and any officer, governing board member, employee, or contractor of such an entity who is deemed to be an employee of the Public Health Service shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to 28 U.S.C. § 233(a) (the remedy against the United States provided by sections 1346(b) and 2672 of title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy

under section 1346(b) of title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim).

11.     Venue is proper in this Forum pursuant to 28 U.S.C. § 1402(b) because Plaintiff sought care from Howard Brown Health, a federally qualified healthcare institution, where the negligence occurred.

12.     This civil action has been timely filed as required by 28 U.S.C. § 2401(b). On October 25, 2024, Doe timely submitted her administrative tort claim to the United States Department of Health and Human Services ("HHS"). On January 24, 2025, the Department of Health and Human Services denied Doe's claim. On April 14, 2025, Doe timely requested reconsideration of her administrative tort claim. Six months have since lapsed, and HHS has not acted on Doe's request for reconsideration—allowing her now to pursue this instant Action.

## FACTS

### *Background*

13.     Doe is a 26-year-old Jewish woman who struggled with her identity from an early age.

14.     As a minor, Doe suffered a series of traumatizing events within her childhood home, including being sexually abused. Between the ages of twelve and eighteen, she regularly engaged in self-harm. She identified as a lesbian and befriended individuals in the LGBTQ+ community, despite her family's strong religious beliefs and opposition to homosexuality. Due to her traumatic childhood experiences, Doe fled her abusive family.

15. Doe was diagnosed with numerous mental health conditions including post-traumatic stress disorder ("PTSD"), anxiety, and depression caused by her traumatic upbringing and history of sexual abuse.

16. Doe's childhood experiences led her to deeply dislike her physical appearance. This psychological distress, coupled with influence from transgender friends and online resources, led Doe to begin exploring whether she was also transgender.

17. As a result of this exploration, Doe self-diagnosed herself as having rapid onset gender dysphoria when she was approximately 17 years old. Doe never underwent an objective diagnostic tool to determine whether she was, in fact, gender dysphoric.

18. During this period, Doe adopted a nonbinary identity in an attempt to avoid and cope with the severe psychological distress and trauma that she endured as a child. However, her psychological distress continued to worsen, and she developed suicidal ideation.

### *Howard Brown Health*

19. In August of 2015, Howard Brown Health was named a Federally Qualified Health Center (FQHC).

20. This designation, awarded by the U.S. Department of Health and Human Services, allowed the organization to pursue new funding streams in order to serve a broad variety of populations.

21. Howard Brown Health proudly identifies itself as "[r]ooted in LGBTQ+ liberation, Howard Brown Health provides affirming healthcare and mobilizes for social justice. We are agents of change for individual wellbeing and community empowerment." It was founded in 1974 and is now "one of the nation's largest lesbian, gay, bisexual, transgender, and queer (LGBTQ+) organizations."

22. Howard Brown Health presently remains listed as FQHC.

### *Doe Seeks Care from Howard Brown Health*

23.     Encouraged by a close friend who was a transgender male, Doe pursued hormone therapy. She sought care at Howard Brown Health and after only one brief visit to Howard Brown Health in 2018, a Nurse Practitioner diagnosed Doe with an endocrine disorder in order to prescribe her testosterone.

24.     The Nurse Practitioner made this diagnosis even though Doe's metabolic comprehensive panels did not show any results indicating a known endocrine disorder such as diabetes, polycystic ovarian syndrome, or hypothyroidism.

25.     Howard Brown Health never performed a diagnostic assessment on Doe to determine whether she had gender dysphoria, and, as a result, she was not diagnosed with gender dysphoria by a physician before starting hormone therapy and, in fact, has never been diagnosed with gender dysphoria.

26.     Very soon after beginning hormone therapy, Doe began suffering severe adverse side effects including severe pelvic pain, vaginal atrophy, prolonged vaginal bleeding, and chronic musculoskeletal pain that caused migraines.

27.     In November of 2022, Doe discovered that her testosterone intake was the likely cause of these symptoms. Excessive testosterone ("hyperandrogenism") is converted to estrogen in a process called "aromatization," and would have potentially contributed to the symptoms of continued lower genital tract bleeding and uterine pain.

28.     Doe sought treatment for these symptoms at another clinic. However, she was instead pushed to consider irreversible surgery removing her reproductive organs upon the recommendation from Howard Brown Health staff.

### *Howard Brown Healthcare Refers Doe for* *Irreversible Surgery*

29.     On April 23, 2019, Dr. Andrew Guzman, a physician at Howard Brown Health, wrote a letter recommending Doe for a hysterectomy as a gender-affirming procedure, noting that "[Doe] has persistent, well documented gender dysphoria" and "no significant medical or mental health concerns that would preclude surgery." This is not supported by Doe's records or medical history.

30.     Doe did not have and had never received a diagnosis for gender dysphoria.

31.     Doe had well-documented diagnoses of numerous mental health conditions due to her traumatic upbringing and history of sexual abuse, including post-traumatic stress disorder, anxiety, and depression, but gender dysphoria was absent from her records.

32.     Dr. Guzman also stated that "He [Doe] understands the implications of this surgery and have stated that surgery is the right decision for them."

33.     Dr. Guzman made this unsupported recommendation without ever meeting or even speaking to Doe.

34.     In addition, Dr. Guzman asserted that Doe "has the capacity to make a fully informed decision and consent to treatment."

35.     Without ever meeting or speaking with Doe, Dr. Guzman could not have known whether Doe had such capacity.

36.     Dr. Guzman's recommendations were clearly incongruent with Doe's actual medical history and asserted that Doe had the capacity to consent to a life-altering, irreversible treatment without ever meeting with Doe to confirm the truth of this statement.

37.     The surgeon then accepted this letter as proof of Doe's readiness for a hysterectomy.

38.     Pursuant to this recommendation letter, Doe proceeded with a total laparoscopic hysterectomy and bilateral salpingectomy.

***Detransition***

6

39. Following a complex recovery from her hysterectomy with bilateral salpingectomy and bilateral periareolar mastectomy, Doe began to realize that neither the testosterone, the hysterectomy, nor the double mastectomy alleviated any of her mental distress.

40. In or around November 2022, Doe stopped taking testosterone completely. That stoppage marked Doe's intent to detransition, as much as she possibly could despite her irreversible procedures.

41. Thereafter, Doe became utterly hopeless, comprehending for the first time what the loss of her uterus, fallopian tubes, and breasts meant for her future reproductive opportunities. This hopelessness escalated into additional anxiety and depression, ultimately mounting into a severe depressive episode in March 2023.

42. Doe sought an emergency appointment with her primary care provider, who counseled her for over eighty (80) minutes on devising a plan of action to treat her mental health.

43. Doe began attending therapy and discovered that the root cause of her psychological distress was not her body's physical features, or lack thereof, it was her unresolved childhood trauma and mental health conditions.

44. After making these therapeutic realizations, Doe began questioning why Howard Brown Health so strongly and quickly pushed her down the path of irreversible surgical interventions, without ever even considering a psychological intervention, requiring her to consider the ultimate outcomes of each surgery, or even pausing to ask her about her childhood and self-diagnosed gender dysphoria.

45. Doe came to understand that she had been taken advantage of by her practitioners when they pushed her down this path so quickly and without basis when she was in a vulnerable position due to her young age and complex mental health history.

46.     Doe also learned that the practitioners who treated her failed to follow the standards of care published by the World Professional Association for Transgender Health.

47.     As a result of these providers' actions, Doe has been permanently injured and sterilized. She has lost her uterus, fallopian tubes, and breasts; the inability to conceive or breastfeed children; she has suffered continued pelvic pain and prolonged vaginal bleeding, increased mental distress, including suicidal ideation, depression, panic attacks, physical manifestations of her mental distress, including migraines and panic attacks, as well as nerve pain, chest hyper-sensitivity, chronic musculoskeletal pain, permanently damaged voice, and a loss of sexual drive and pleasure.

48.     If Doe's medical providers had acted appropriately, followed applicable standards of care, or took actions based on Doe's documented medical history rather than rushing her to undergo chemical and irreversible surgical interventions, Doe would not have been injured.

49.     As a result of the providers' actions, Doe mourns that she will never naturally conceive a child or experience the bond of breastfeeding a future child.

50.     Doe is bringing this action more than 180 days after submittal of her Federal Tort Claims Act SF-95.

### Howard Brown Health's
### Improper Tampering of Doe's Medical Records

51.     In fall of 2023, Counsel for Doe requested her medical records on her behalf. Upon review of Doe's records, it was discovered on October 30, 2023, that portions of the 89-page medical records from Howard Brown Health were improperly redacted.

52.     During the review process, counsel discovered that white rectangles were placed directly over some of Doe's medical records. At first, this was believed to be an error.

53.     However, the white rectangles covered the same pieces of information throughout Doe's medical records from Howard Brown Health.

54. Therefore, counsel concluded that this was not an error with Adobe PDF but likely rather an intentional tampering with Doe's medical records performed prior to sending them to Doe's counsel.

55. It appears that Howard Brown Health attempted to redact all references to Doe's depression and history of sexual abuse. Below are the improper redactions:

    a. Howard Brown Health redacted Doe's second answer to the Depression Screening PHQ-2: "Been feeling down, depressed, or hopeless? Several days"; and the "PHQ-2 Score: 1" for the following visits: 4/2/2018, 11/1/2018, 3/21/2019, 1/3/2022, 6/17/2022.

    b. Howard Brown Health redacted Doe's answer to the PHQ-9 question 1.b. "Feeling down, depressed, or hopeless – Several days" for the following visits: 4/2/2018, 3/21/2019, 1/3/2022, 6/17/2022.

    c. References to depression that Doe was suffering from were redacted from her 4/2/2018 and 11/1/2018 visits

    d. Doe's history of sexual abuse was redacted from her 4/2/2018, 11/1/2018, and 11/14/2018 visits

    e. "Hx of Sexual abuse" was listed as an active problem in her medical history, coded ICD-v15.41; ICD10-Z91.410 on November 14, 2018, yet no treatment was offered in the form of talk therapy or a support group, etc. It was also never listed again in these records after November 2018.

    f. On 3/21/2019, the provider added an addendum to the main note that they observed her PHQ-9 score increased from 4 to 6, which is considered mild depression; no action was taken at the time to intervene, like prescribing an

anti-depressant or recommending talk therapy to help, this observation was ultimately also redacted from Doe's 3/21/20-19 visit.

g. GAD-7 Screening Results (Recommendation: Minimal anxiety) was redacted from Doe's 6/17/2022 visit.

56. This tampering is indicative of Howard Brown Health's consciousness of its own negligence and malpractice in failing to consider Doe's past history of mental health issues and sexual abuse.

## LEGAL CLAIMS

### COUNT I: NEGLIGENCE

57. Doe restates and realleges each and every allegation of the paragraphs above as if fully set forth herein.

58. Under 42 U.S.C.§ 233(g), a qualifying entity (a public or non-profit private entity receiving federal funds), and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner, shall be deemed to be an employee of the Public Health Service.

59. The remedy against the United States for such entity and any officer, governing board member, employee, or contractor of such an entity who is deemed to be an employee of the Public Health Service shall be exclusive of any other civil action or proceeding to the same extent as the remedy against the United States is exclusive pursuant to 28 U.S.C. § 233(a) (the remedy against the United States provided by sections 1346(b) and 2672 of title 28, or by alternative benefits provided by the United States where the availability of such benefits precludes a remedy under section 1346(b) of title 28, for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical

studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim).

60.     Howard Brown Health, and its employees, are subject to the Federal Tort Claims Act (FTCA) because it is a federally qualified health center and as such, these employees are deemed employees of the Public Health Service based on the above.

61.     Accordingly, Howard Brown Health is a Federally Qualified Health Center, making it subject to an FTCA claim;

62.     Doe was injured by Howard Brown Health employees including Nurse Practitioner Rick McEwan who misdiagnosed and prescribed testosterone to Doe, as well as Dr. Guzman, who wrote a letter on behalf of Doe that was inaccurate and misrepresentative of her ability to consent to a life-altering surgery.

63.     Mr. McEwan was acting within the scope of his official duties when misdiagnosing and prescribing testosterone to Doe. Dr. Guzman acted within the scope of his official duties when writing a recommendation letter on behalf of Doe.

64.     However, these medical professionals acted negligently.

65.     First, McEwan was negligent in failing to perform a diagnostic assessment on Doe to determine whether she had gender dysphoria and in beginning hormone therapy for gender dysphoria on Doe without any underlying gender dysphoria diagnosis.

66.     Dr. Guzman was negligent in recommending that Doe undergo a hysterectomy as a gender-affirming surgery even though she had no underlying gender dysphoria diagnosis, had a significant and complex mental health history, and he had never met or spoken to her.

11

67. Neither of these medical professionals obtained informed consent from Doe by adequately and thoroughly discussing the risks, outcomes, and alternatives to the prescription of testosterone and the recommendation of life-altering surgery.

68. These acts were the proximate cause of Doe's damages, which include: medical bills; increased body fat; reduced muscle bulk and strength; decreased bone density; frontal scalp hair loss and thinning; decreased self-confidence; worsening anxiety, depression, and other mental health conditions; trouble concentrating and remembering details; increased acne; disturbed breathing while sleeping; swelling in the ankles; severe pelvic pain; vaginal atrophy; prolonged vaginal bleeding; chronic musculoskeletal pain causing migraines; cystic acne; voice changes; increase in facial and body hair; increased cholesterol levels; increased risk of diabetes and obesity; increased hematocrit count contributing to an increased likelihood of stroke, heart attack, and other dangerous conditions.

69. Doe has also experienced numerous harms constituting general damages from her hysterectomy and bilateral salpingectomy, including: loss of fertility; decreased estrogen levels; increased menopausal systems including but not limited to, hot flashes, mood swings, night sweats, bloating, thinning hair, decreased libido, headaches, recurring urinary tract infections, burning mouth syndrome, dry mouth leading to a higher risk of developing gum disease or cavities, fatigue, acne, joint pain, muscle tension and aches, electric shock sensations, itchiness, sleep disturbance, difficulty concentrating and remembering, increased weight and body fat, decreased keratin leading to brittle, weak nails that crack or break easily, stress incontinence, dizziness, decrease in bone density, heartbeat irregularity, tinnitus, worsening depression, anxiety, panic attacks, and other mental health conditions; and insomnia. Doe has been rendered infertile due to this.

**PRAYER FOR RELIEF**

12

WHEREFORE, Plaintiff prays for Judgment as follows:

1. For an award of damages for each injury;

2. For pre and post-judgment interest;

3. For all expenses, costs, disbursements, and attorney's fees as allowed by law;

4. Such other and further relief the Court deems just and equitable.

ECKLAND & BLANDO LLP

Dated: March 19, 2026

/S/ DANIEL J. CRAGG

Daniel J. Cragg, Esq.
100 Washington Avenue South
Suite 1500
Minneapolis, MN 55401
(612) 236-0160
dcragg@ecklandblando.com
*Counsel for Plaintiff*

13