**TO UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Jane Doe, | Case No.: 26-cv-03118 |
| Plaintiff, | Case Type: Civil Medical Malpractice/Other |
| v. | Judge Jeremy C. Daniel |
| United States, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CONTINUED SEALING OF COMPLAINT AND TO**
**PROCEED UNDER A PSEUDONYM**

Detransitioner medical malpractice cases arrive in an exceptionally charged national environment where the public discourse is polarized and adversarial, and even empirical scientific inquiry about the evidence base for youth medical transition is met with moral condemnation. Individuals who bring these claims, having transitioned and *detransitioned*, find themselves caught between the extremes of a broader debate, drawing unwanted attention, intense scrutiny, and harassment and threats of safety for simply seeking the legal redress they are entitled to under the law. This very legitimate fear is exemplified through the experience of other detransitioners who have filed lawsuits and been subjected not just to harassment, but even death threats, for seeking legal recourse.

While this deep tension remains, it is crucial to allow detransitioners, like Doe, to proceed under a pseudonym to protect them from harassment, threats, and even physical harm. Without this public-facing anonymity, these legitimate fears will dissuade

1

detransitioners from bringing their cases altogether. Accordingly, Plaintiff Jane Doe respectfully requests that the Court grant her Motion for continued sealing of her complaint and to proceed under a pseudonym.

## <u>FACTUAL BACKGROUND</u>

In her Complaint, Plaintiff alleges the following sensitive and graphic facts: Doe was sexually abused as a child, leading to self-harming behaviors between the ages of twelve and eighteen. (Declaration of Daniel J. Cragg ("Cragg Decl."), Exhibit B ("Doe Compl.") ¶ 14.) Doe was diagnosed with numerous mental health conditions, including post-traumatic stress disorder ("PTSD"), anxiety, and depression, all caused by her traumatic upbringing and history of sexual abuse. (*Id*. ¶ 15.) These childhood experiences resulting in psychological distress, paired with influence from transgender friends and online resources, led Plaintiff to begin exploring whether she was also transgender. (*Id*. ¶ 16.)

As a result, Doe self-diagnosed herself with gender dysphoria at age seventeen. (*Id*. ¶ 17.) Encouraged by a close friend who identified as transgender, Doe successfully pursued hormone therapy, which was ultimately (and negligently) provided by Howard Brown Health. (*Id*. ¶¶ 23, 25.) Doe's Complaint includes details regarding the severe side effects she suffered from testosterone treatment, including pelvic pain, vaginal atrophy, prolonged bleeding, and chronic musculoskeletal pain causing migraines. (*Id*. ¶ 26.) Her Complaint continues on to discuss intimate details about her condition, reproductive organs, and the sensitive medical procedures and current side effects related to her transition and subsequent detransition. (*See generally id*.)

2

Plaintiff filed her state court action in Wisconsin on November 1, 2023. (Cragg Decl. ¶ 1.) On October 31, 2023, Doe attempted to file her Complaint under temporary seal using a "Jane Doe" pseudonym. (*Id.* ¶ 2.) After the Complaint was rejected by Dane County Circuit Court for using the name "Jane Doe," Doe refiled the Complaint on November 1, 2023, using her real name, but still requesting a temporary seal while the Court considered her Motion to Seal. (*Id.*) Even in the short timeframe of Doe's identity being public, before the Court sealed the Complaint, Doe's Complaint, including her name and identity, was obtained by local news media. (*Id.* ¶ 4.)

This led to a flurry of media coverage in Wisconsin, nationwide coverage, and online discussion.[1] On November 2, 2023, the Complaint was sealed by the court's office administration. (*Id.*) On July 29, 2024, the Court granted Plaintiff's motion for protective order, allowing her to proceed using a pseudonym. (*Id.* ¶ 4, Exhibit A.)

---

[1] *See Woman Says UW doctors performed gender-altering surgeries without proper consent*, WISCONSIN STATE JOURNAL, Nov. 3, 2023, (https://madison.com/news/local/business/health-care/woman-says-uw-doctors-performedgender-altering-surgeries-without-proper-consent/article_ff7bd30a-79ab-11ee-82bc- 8fefeb60d060.html); *UW gave gender-transition surgeries without proper consent: lawsuit*, FOX NEWS, Nov. 5, 2023, (https://www.foxnews.com/us/uw-gave-gender-transition-surgeries-withoutproper consent-lawsuit); *Jewish Detransitioner Sues Her Surgeons, Mourns She'll Never Conceive Naturally After Hysterectomy*, DAILYWIRE, Nov. 6, 2023, (https://www.dailywire.com/news/jewish-detransitioner-sues-her-surgeons-mourns-shell-neverconceive-naturally-after-hysterectomy); *Woman Says UW doctors performed gender-altering surgeries without proper consent*, REDDIT, (https://www.reddit.com/r/madisonwi/comments/17mw4nm/woman_says_uw_doctors_performed_genderaltering/), (last visited Nov. 12, 2023).

## LEGAL STANDARD

Under Rule 5.7 of the Local Rules of the Northern District of Illinois, the clerk is authorized to accept a complaint for filing and treat that complaint and the accompanying papers as if they were restricted pursuant to LR26.2 where the complaint is accompanied by a written request, providing a party time to seek further, permanent relief. Pursuant to Rule 26.2(c) of the Northern District of Illinois Local Rules, the court may for good cause shown enter an order directing that one or more documents be filed under seal.

A plaintiff may proceed pseudonymously if she has "a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *Doe v. Cook Cnty.*, 542 F. Supp. 3d 779, 784 (N.D. Ill. 2021) (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)). Historically, courts have permitted plaintiffs to proceed pseudonymously in cases involving abortion, homosexuality, welfare assistance, child abuse, sensitive medical conditions, and certain religious observances, among others. *Id.* (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001); Doe v. United Servs. Life Ins. Co., 123 F.R.D. 437, 439 (S.D.N.Y. 1988); *W.G.A. v. Priority Pharmacy, Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999); *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)).

## ARGUMENT

Plaintiff requests first that she may be allowed to proceed with her lawsuit, beginning with her Complaint, under the pseudonym of Jane Doe; meaning, that in all publicly filed documents, all parties to this matter shall remove or otherwise redact

Plaintiff's identifying information of her name and address, so that Plaintiff appears to the public with a "Jane Doe" pseudonym. Given the extremely sensitive nature of the allegations involved in Doe's Complaint, and the current polarizing and vitriolic climate with respect to transgender policies and issues, there is an overriding public interest to grant Plaintiff's Motion.

Broadly, courts have allowed parties to proceed pseudonymously in cases involving deeply personal and stigmatizing matters, including "abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 338 (E.D. Pa. 2021).

With regard to transgender people specifically, several circuits have allowed plaintiffs to proceed with public anonymity due to the private and intimate nature of being transgender as well as the widespread discrimination, harassment, and violence faced by these individuals. *See Delaware Valley Aesthetics, PLLC v. Doe 1*, 2021 WL 2681286, at *4 (E.D. Pa. June 30, 2021) (transgender defendant feared violence because evidence offered for *in camera* review would show that, as a result of the lawsuit, her name "appeared on internet forums notorious for directing harassment and death threats toward transgender women"); *Doe v. Triangle Doughnuts*, *LLC*, 2020 WL 3425150, at *5 (E.D. Pa. June 23, 2020) (supported public anonymity when plaintiff experienced workplace harassment and sought to avoid "potential harm" from revealing transgender identity). In those instances, courts have thus balanced the need for a public trial with the need for anonymity by requiring plaintiffs to disclose their legal names for purposes of conducting discovery and depositions.

The Seventh Circuit has not articulated a test or elements for determining when exceptional circumstances exist to justify allowing a party to proceed under a pseudonym." *Doe v. Purdue University*, 321 F.R.D. 339, 341 (N.D. Ind. 2017). The Central District of Illinois did find, however, in *Doe I v. University of Illinois* that the Second Circuit's test, articulated in *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2d Cir. 2008), is a "thorough, comprehensive factor-based balancing test for use in motions to proceed pseudonymously, and would note that the Seventh Circuit has, in the past, cited to some of the *Sealed* test's factors with approval." *See Doe ex rel. Doe v. Elmbrook School District*, 658 F.3d 710, 724 (7th Cir. 2011), aff'd en banc in relevant part by *Doe ex rel. Doe v. Elmbrook School District*, 687 F.3d 840, 842-43 (7th Cir. 2012).

The *Sealed* factors are: (1) whether the case involves "highly sensitive" and "personal" matters; (2) whether identification would cause the litigant or a third party physical or mental harm; (3) whether identification would cause an injury that the litigation seeks to prevent; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of her age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether and how keeping the plaintiff anonymous would prejudice the defendant; (7) whether the plaintiff's identity has remained confidential; (8) whether identifying the plaintiff furthers the public interest; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and (10) whether alternative mechanisms could protect the plaintiff's confidentiality. *Sealed*, 537 F.3d at 190. *Doe I v. Univ. of Illinois*, No. 18-CV-2227, 2019 WL 13292936, at *3 (C.D. Ill. Feb. 14, 2019).

Ultimately, whether to allow a party to proceed under a fictitious name is within the court's discretion. *K.F.P. v. Dane Cnty.*, 110 F.3d 516, 519 (7th Cir. 1997).

## I. Proceeding by Pseudonym Will Allow this Highly Vulnerable Plaintiff to Bring Her Highly Sensitive Claims Without Risking Severe Harm.

The underlying facts of Plaintiff's action are incredibly sensitive and personal, involving childhood sexual abuse and related trauma. Plaintiff's suit also includes sensitive, intimate, and at times, graphic descriptions of life-altering surgeries that left her barren and breastless. Connecting Plaintiff's name to these important, but deeply sensitive, traumatic facts, could provide even greater opportunities for retaliation against her in a personally damaging and exposing manner. Exposing her identity and sensitive medical records to the public would undoubtedly subject Doe to annoyance, embarrassment, and harassment. Indeed, there is already a great interest in Doe's case across media outlets and Internet communities alike. (*See* Cragg Decl. ⁋ 4.)

Cases like Doe's are also garnering widespread media attention in light of the first medical malpractice verdict for a detransitioner in the United States:

> [t]he decision has sparked widespread discussion across legal, medical, and public policy circles. While the case does not determine the legality of gender-affirming care as a whole, it raises important questions about standards of care, informed consent, and how irreversible medical decisions are handled when patients are minors.[2, 3]

---

[2] Furman Honick Law, *Landmark Medical Malpractice Verdict in the First U.S. Detransitioner Lawsuit*, Furman Honick Law (Feb. 3, 2026), https://www.furmanhonick.com/first-u-s-detransitioner-lawsuit/.

[3] Federal Rule of Evidence 201(c)(1) authorizes a court to take judicial notice without a request from a party. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011). Under Rule 201(b) of the Federal Rules of Evidence, a court can take judicial notice of an adjudicative fact "not subject to reasonable dispute" because it: "(1) is generally

Issues related to transgender rights and "gender-affirming care" are sharply polarizing and yield harassment from all sides. Courts across the country have recognized the need to protect the identity of vulnerable individuals, particularly those in the transgender community. *See, e.g., Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 340 (E.D. Pa. 2021) (plaintiff has supported her motion for anonymity with statistical evidence and media reports describing the danger faced by transgender individuals in the community.)

In *Genesis Healthcare*, for example, the court acknowledged the reasonable and justifiable fear of Plaintiff's safety, warranting anonymity. *Id*. (By using a pseudonym, Plaintiff also seeks to avoid additional threats or future harmful interactions with co-workers based on her transgender status and similar to those that allegedly marked her employment with Defendants.) Further bolstering the decision in *Genesis Healthcare*, the court in *Doe v. Pennsylvania Dep't of Corr.*, 585 F. Supp. 3d 797, 804 (W.D. Pa. 2022) recognized the rational fear that the transgender plaintiff possessed: "Doe fears that disclosure of their identity in connection with this lawsuit will not only forcibly 'out' them as transgender but lead to further harassment as well as increase their risk of physical and sexual violence."

---

known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. *Fryman v. Atlas Fin. Holdings, Inc.*, No. 18-CV-01640, 2022 WL 1136577, at *7 (N.D. Ill. Apr. 18, 2022).

Plaintiff resides in a very liberal neighborhood in Chicago and works at a hospital that provides and supports "gender-affirming care" (where she is a registered nurse whose information is readily searchable online). She has made significant efforts to detransition through corrective surgeries (to the extent she is able) and live as normal of a life as possible. Given the media attention she has already experienced, including the lengthy threads on message boards discussing the details surrounding her state court action (including hinting at her identity before it was sealed by the court, and, in the same message board thread, accusing her of being a "right-wing grifter,"[4]) she legitimately fears not only the disclosure of her lawsuit could create harmful interactions with coworkers and the public alike, but also potential harassment and threats at the hands of extremists.

As the Puerto Rico Federal District Court observed, "[m]uch like matters relating to marriage, procreation, contraception, family relationships, and child rearing, 'there are few areas which more closely intimate facts of a personal nature' than one's transgender status." *Arroyo Gonzalez v. Rossello Nevares*, 305 F. Supp. 3d 327, 333 (D.P.R. 2018) (quoting *Doe v. Town of Plymouth*, 825 F. Supp. 1102, 1107 (D. Mass. 1993)); *see Doe v. Blue*

---

[4]  *Reddit* (Nov. 14, 2023, 1:40 PM), https://www.reddit.com/r/madisonwi/comments/17mw4nm/woman_says_uw_doctors_pe rformed_genderaltering/. ("The case was not filed with a pseudonym so I was able to see who it is. It appears to be a recent UW grad who had written on the topic of intersex and also graduated with a certificate in Gender and Women's Studies."); ("That falls perfectly in line with right-wing talking points about why transition should actually be outlawed"); ("This seems like the next right wing grifter. No way you have these surgeries without consent."); ("I've joked with my partner about how easy it would be for me to become one of the destransitioner grifters - just need to start whining about "testosterone ruining my body" and "careless doctors destroying my fertility.")

*Cross & Blue Shield of Rhode Island*, 794 F. Supp. 72, 74 (D.R.I. 1992) (a transgender "plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion"); *Orr v. Trump*, No. 1:25-CV-10313-JEK, 2025 WL 848691, at *2 (D. Mass. Mar. 18, 2025). Moreover, courts have also granted pseudonym requests in cases involving sensitive medical and psychological issues. *See, e.g.*, *Roe v. City of Milwaukee*, 37 F.Supp.2d 1127 (1999) (a civil rights plaintiff was allowed to proceed under a pseudonym because he was concerned that the litigation could result in disclosure of his HIV-positive status).

Plaintiff's complex personal and medical history is fraught with trauma—trauma from the sexual abuse she suffered, the mental health issues that followed, life-altering medical procedures, and the efforts to come to terms with a medical system and team that she feels betrayed her. She is no doubt vulnerable. Her lawsuit details personal information that has already been subject to online scrutiny. There is no doubt that these matters are intimate and sensitive. This topic is highly charged, even more than it was at the time she filed her state court action (in which she is able to proceed under pseudonym). These facts, and supporting case law, justify allowing her to proceed with public anonymity under the *Sealed* factors.

## II.   Public Interest Supports Public Anonymity

Public interest also weighs in favor of public anonymity. The Plaintiff would have great difficulty proceeding in this litigation without anonymity, given her reasonable fear for her safety. The court recognized in *Genesis Healthcare* the likelihood that similar potential plaintiffs may be deterred from litigating their claims from similar reasons and

thus public policy supported anonymity. *Id.* If they are not permitted to proceed pseudonymously, such plaintiffs and other transgender individuals might not assert claims for relief in court, regardless of the merit of the claims.

In other words, the denial of Plaintiffs' request could deter, "to an unaccceptable degree, similarly situated individuals from litigating." *Doe v. Mass. Inst. of Tech.*, 46 F.4th at 72. *Doe v. Austin*, No. 2:22-CV-00368-NT, 2023 WL 3568188, at *1 (D. Me. May 19, 2023). The public can evaluate the Court's assessment of the issues in the case without the knowledge of Plaintiff's identity. While the Court recognizes the importance of the public interest in "access to judicial proceedings and records," it also recognized in *United States v. Kravetz*, that the crux of an action like this is not necessarily about who the plaintiff is, but more so, what *happened to* the plaintiff—and those details would remain publicly available:

> It should not be lost in the arguments that **the issues to be decided on the merits in this case have less to do with the Plaintiffs identity, but more to do with the alleged actions of the doctors, who are public, government actors, and whether the care they met the standard of care for services provided.** It's the facts that people are interested in. There is a lessened public interest in knowing the Plaintiff's name. . . But, revealing the Plaintiff's identity to the public poses real risks of threats, intimidation, doxxing, harassment and exposing matters related to past childhood trauma. The public's interest in maintaining the Plaintiff's anonymity is simple. Should the Court not preserve her anonymity, there would be a chilling effect for future litigants desiring to bring claims such as the case at bar. They would be deterred for fear of facing any virulent backlash that may result from bringing a like suit, and they may feel apprehension about having their childhood trauma related to sexual abuse spotlighted for the world's fodder and consumption. The Court concludes that there is an

11

> overriding public interest in protecting the Plaintiff's identity
> which outweighs the presumption of public access.

706 F.3d 47, 52 (1st Cir. 2013) (emphasis added).

Moreover, multiple courts have now recognized that while embarrassment alone is not a harm sufficient to justify anonymity, plaintiffs with some sort of transgender status face a "severe harm" to their privacy and thus their right to privacy under the Fourteenth Amendment is an interest sufficient to vindicate and protect—and the fear of harassment, physical harm, and violation of their privacy rights are reasonable. *Doe v. Pennsylvania Dep't of Corr.*, 585 F. Supp. 3d 797, 806 (W.D. Pa. 2022) (citing *Doe v. Pennsylvania Dep't of Corr.*, No. 4:19-CV-01584, 2019 WL 5683437, at *3 (M.D. Pa. Nov. 1, 2019)).

Here, Plaintiff requests a pseudonym to be used in place of her name for all public filings. The public has an overriding interest in protecting Plaintiff's privacy and reputation to ensure that she is protected from inevitable doxing, harassment, potential violence, discrimination, retaliation, and unwanted media attention to her incredibly personal claims of malpractice. As already made clear in the related state court action in Wisconsin, Plaintiff has no interest to politicize and publicize her case. She was wronged she seeks to take legal recourse for the negligence that occurred at the hands of the medical professionals whom she entrusted to care for her. But transgender rights and "gender-affirming care" have become sharply polarizing topics that lead to harassment from all sides, as noted by Judge Nia Trammel in Doe's Wisconsin state court action, permitting her to proceed with anonymity in that Action:

> There are greater public interests at issue here than just any
> humiliation or reputational harm that the Plaintiff may

experience from bringing her claims. As identified by the Plaintiff, this matter involves the provisioning of gender affirming care to a young adult and the standard of care that applies. Both parties acknowledge the public interest in the factual underpinnings of the case, as cases such as this are shaping across the nation and will ultimately provide guidance, as well as serve to engage public discourse on what should be the wisdom of the courts. Plaintiff documented the enmity that exists for detransitioners, and cites instances where they been subjected to threats and potential harm, as well as harassment for bringing voice to their experiences through medical malpractice claims. Additionally, the Plaintiff demonstrates that her case involves highly sensitive medical records, some of which may dredge up issues related to past traumatic events in her childhood.

(Cragg Decl. ¶ 5, Exhibit A at 6.) The small list of other individuals who have brought medical malpractice claims have been subjected to hate mail, death threats, doxing, intimidation, and other severely negative emotional reactions from the public across the United States.[5]

Fox Varian's landmark New York case is indicative of the type of litigation that this Court, and many others, will see increase in the years to come—however, given the extremely sensitive nature of this type of litigation, and the tense and emotional sociopolitical climate surrounding the topics of transgender issues in America, plaintiffs may be deterred from pursuing legal claims if forced to risk harassment, public vilification,

---

[5]     *See e.g.*, Chloe Cole, Twitter/X, Jan. 14, 2023 ("I just don't want kids to be sterilized because of mental health problems. I get death threats because of this opinion."); *Young people who detransition describe death threats*, (Nov. 15, 2022), https://www.dailymail.co.uk/news/article-11417609/De-transitioners-warn-growing-levelsonline-vitriol-doxxingharassment-death-threats.html ("I've seen the level of hate really escalate to the point that any time a new de-transitioner shares their story online, they get dogpiled by thousands of trans activists, bullied, ridiculed, and of course death threats.").

and potentially, targeted attacks from extremists. Thus, it is absolutely in the public interest's favor to allow Doe to proceed under a pseudonym.

### III. There is No Prejudice to Defendant

Finally, Defendant is not prejudiced by Plaintiff litigating under a pseudonym. Notably, Plaintiff has maintained confidentiality of her identity since beginning litigation in her related state court case in Wisconsin. This is a factor courts often favor when determining anonymity. *See, e.g., Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 340 (E.D. Pa. 2021) (Plaintiff has maintained confidentiality since the commencement of this litigation in order to protect herself, which weighs in favor of anonymity.); *Doe v. Pennsylvania Dep't of Corr.*, 585 F. Supp. 3d 797, 804 (W.D. Pa. 2022) (Doe's efforts to keep their identity and this litigation confidential weigh in favor of anonymity).

Plaintiff has not participated in any media interviews or other disclosed her identity and story in any other public venue beyond the walls of the Courthouse nor does she have an interest in doing so. Plaintiff simply seeks to proceed living her life quietly while she exercises her right to litigate her case.

Moreover, allowing Plaintiff to proceed anonymously in *publicly filed documents* does not hinder this litigation or impair Defendant's ability to mount a full defense. Nothing substantively changes in this litigation should Plaintiff be allowed to proceed using a pseudonym. Motions can still be filed and heard. Written discovery can still be exchanged and depositions taken. Courts across the Country routinely manage litigation under such a parameter. The only protected detail may be Doe's name, and all other details could be exposed and accessible to the public, unless ultimately subject to a broader protective order.

14

Nothing otherwise materially affects Defendant's ability to litigate in this Action. These two *Sealed* factors thus support Plaintiff's motion to seal and proceed under a pseudonym.

## CONCLUSION

For these reasons, Plaintiff respectfully requests the Court grant her Motion for continued sealing of her Complaint and to proceed under a pseudonym.

ECKLAND & BLANDO LLP

Dated: March 24, 2026     /S/ DANIEL J. CRAGG

Daniel J. Cragg, Esq.
100 Washington Avenue South
Suite 1500
Minneapolis, MN 55401
(612) 236-0160
dcragg@ecklandblando.com

*Counsel for Plaintiff*

15